UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LASANDRA NORMAN, <br><br> Plaintiff, <br><br> v. <br><br> NORTHWEST INDIANA CA Section 8, et al., <br><br> Defendants. | CAUSE NO.: 2:21-CV-158-TLS-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Second Amended Complaint [ECF No. 7] and a Motion to Proceed in Forma Pauperis [ECF No. 8], filed on July 30, 2021, by LaSandra Norman, a plaintiff proceeding without counsel. The Court previously dismissed the Plaintiff's Complaint [ECF No. 1] and Amended Complaint [ECF No. 4] for failure to state a claim and granted the Plaintiff one final opportunity to amend her Complaint. Because the Plaintiff has not stated a claim upon which relief can be granted, the Court denies the motion and dismisses the case with prejudice.

**DISCUSSION**

Ordinarily, a plaintiff must pay a statutory filing fee to bring an action in federal court. 28 U.S.C. § 1914(a). However, the federal in forma pauperis statute, 28 U.S.C. § 1915, provides indigent litigants an opportunity for meaningful access to the federal courts despite their inability to pay the costs and fees associated with that access. *See Neitzke v. Williams*, 490 U.S. 319, 324 (1989). An indigent party may commence an action in federal court, without prepayment of costs and fees, upon submission of an affidavit asserting an inability "to pay such fees or give security

therefor." 28 U.S.C. § 1915(a). Here, the Plaintiff's motion establishes that she is unable to prepay the filing fee.

However, the Court must also consider whether the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *Id*. § 1915(e)(2)(B). District courts have the power under § 1915(e)(2)(B) to screen complaints even before service of the complaint on the defendants and must dismiss the complaint if it fails to state a claim, applying the standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999); *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1018, 1027 (7th Cir. 2013). To state a claim under the federal notice pleading standard, a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the complaint, a court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018).

In the Second Amended Complaint [ECF No. 7], the Plaintiff makes the following allegations. The Plaintiff is an African American woman. In April 2021, the Plaintiff's new landlord took out a mortgage from Fifth Third Bank to buy the house where the Plaintiff resides. Aware of the mortgage, Defendant Northwest Indiana CA paid the landlord $456.00 in April 2021 for the Plaintiff's rent. The Plaintiff was to pay $464.00 per month, which was more than 30% of her income, for a total rent payment of $920.00 per month. The landlord harassed the

Plaintiff for her rent payments in May 2021 before the landlord made his first mortgage payment, bringing the police to the Plaintiff's house on May 7, 2021, with a 10-day notice to pay.

On May 12, 2021, the Plaintiff received a letter dated May 5, 2021, from Kelly Diernfield, a supervisor at Northwest Indiana CA, stating that the Plaintiff was in violation for not paying her rent and that she must comply with the terms of the lease to avoid termination.[1] On May 12, 2021, the Plaintiff paid the landlord $464.00 under a verbal agreement that he would give her a new lease; she has not received the new lease. The only reason she paid the rent is because she received the letter threatening termination from Northwest Indiana CA. In a telephone conversation, Diernfield told the Plaintiff that, because the Plaintiff lives in a two-bedroom house and there was no one else on her lease, she would be required to pay more rent for the extra bedroom or move again even though her income remained the same.

The Plaintiff alleges that the Defendants are part of a scheme in which Northwest Indiana CA is forcing her to pay the landlord's mortgage, taxes, and insurance through her rent payments. On May 17, 2021, Diernfield explained to the Plaintiff that a clause in the Plaintiff's lease provides that, if the owner sells the property, the lease automatically transfers to the new owner. The Plaintiff alleges that the clause was not in the original contract and was added by Northwest Indiana CA. The Plaintiff attached the lease as Exhibit D to the Second Amended Complaint. *See* Second Am. Compl. Ex. D, ECF No. 7. Preprinted paragraph 14 of the lease provides: "Sale of Property. Upon voluntary or involuntary transfer of ownership of the Property, Landlord's obligations under this Agreement are expressly released by Tenant. The new owner

---

[1] The Plaintiff alleges in the Second Amended Complaint that she received the letter on May 13, 2021, *see* Second Am. Compl. ¶ 8; however, she also alleges that she made the rent payment on May 12, 2021, because she received the threatening letter, *see id.* at ¶ 7. Previously, in the Amended Complaint, she alleged that she received the letter on May 12, 2021. *See* Am. Compl. 2, ECF No. 4.

of the Property shall be solely responsible for the Landlord's obligations under this Agreement." *Id.* The new landlord was given the Plaintiff's security deposit without the Plaintiff's consent.

In June 2021, the landlord requested the rent payment and advised the Plaintiff to pay before June 10, which would have been when late fees attached. The Plaintiff told him that the lawn needed cutting; the landlord responded that the lawn is the tenant's responsibility. The Plaintiff disputed both the rent payment and the lawn care on the basis that she does not have a lease with the new landlord. In a June 8, 2021 letter from Diernfield, the Plaintiff was advised that, due to multiple violations of the lease, her housing assistance would end July 8, 2021. The Plaintiff requested a hearing, which was held on June 30, 2021; the decision to terminate her housing assistance was affirmed. *See* Second Am. Compl. Ex. F, ECF No. 7 (finding that the Plaintiff "did in fact commit repeated and serious lease violations by not paying rent and not maintaining the care of her lawn as stated in lease"). On July 1, 2021, the Plaintiff received a letter from the landlord's attorney, indicating that she was $1,740.00 behind in rent for the months of June and July 2021 and giving her 30 days to pay in full before eviction proceedings would begin. *See* Second Am. Compl. ¶ 19; *id.* at Ex. E, ECF No. 7.

The Plaintiff alleges that she could have paid a mortgage if she had been given the opportunity but that she has been discriminated against in her ability to get a mortgage by having to pay rent with Section 8 assistance. She alleges that the Defendants are part of a government scheme to make her pay rent, care for the lawn, and pay the utilities to help the landlord pay his mortgage, which she alleges is discriminatory against her as an African American woman. The Plaintiff alleges that, when she complained to Northwest Indiana CA that it is unfair that her landlord has a mortgage that she helps to pay through her rent payments, she was retaliated

4

against by the termination of her housing assistance. Second Am. Compl. ¶¶ 2, 4, 13, 28 (Concl.).

The Plaintiff has failed to state a claim of discrimination or retaliation under the Fair Housing Act. First, the Fair Housing Act (FHA), also known as Title VIII of the Civil Rights Act of 1968, makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).[2] The Plaintiff alleges that she was discriminated against because she is an African American woman and refused to "go along with a section 8 government scheme" to make her pay her landlord's mortgage, taxes, and insurance through her rent payments. Second Am. Compl. ¶¶ 2–4, 11, 13. As with her first two complaints, the Plaintiff has alleged no facts connecting the collection of her unpaid rent to her race or sex and has offered no facts from which it could be reasonably inferred that her landlord or Northwest Indiana CA engaged in race or sex discrimination. Again, she has alleged no facts that would excuse her from paying her rent or caring for the lawn, that would prevent the landlords from seeking payment of the rent or requiring that she care for the lawn, or that she was treated differently from any other tenants not in her protected classes in the collection of rent or in the failure to care for the lawn. As for the Plaintiff's disagreement with the amount of her monthly rent payment, the terms of the lease requiring that she care for the lawn, the fact that her landlord owns the property subject to a

---

[2] An "aggrieved person" may file a civil action in federal court. *See* 42 U.S.C. § 3613(a)(1). The FHA defines an "aggrieved person" as "any person who—(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." *Id.* at § 3602(i). "Discriminatory housing practice" is defined as "an act that is unlawful under section 3604, 3605, 3606, or 3617." *Id.* at § 3602(f).

mortgage, or the assignment of the lease and Section 8 housing payments to the new landlord, the Plaintiff alleges no facts to reasonably infer discrimination because of her race or gender.

Next, the Plaintiff alleges that she could have paid a mortgage of her own. Second Am. Compl. ¶ 12. The FHA prohibits discrimination in residential real estate transactions. *See* 42 U.S.C. § 3605(a) (forbidding discrimination in real estate-related transactions because of race, color, religion, sex, handicap, familial status, or national origin); *see also id.* § 3604(b) (making it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale . . . of a dwelling . . . because of race, color, religion, sex, familial status, or national origin"); 24 C.F.R. § 100.120 (forbidding discrimination "against any person in making available loans or other financial assistance for a dwelling . . . because of race, color, religion, sex, handicap, familial status, or national origin"). However, the Plaintiff has not alleged that she applied for or attempted to apply for a mortgage much less that she was discriminated against in any such effort. The Plaintiff has failed to state a claim of discrimination under the FHA based on the assertion that she could have paid a mortgage of her own.

The Plaintiff also alleges that the Defendants did not "take into consideration other litigated circumstances such as her income or disabilities." Second Am. Compl. ¶ 2. It is illegal under the FHA to discriminate in the rental of a dwelling because of the renter's disability. *See* 42 U.S.C. § 3604(f). Because the Plaintiff has not alleged any information regarding a disability or how she was discriminated against based on a disability, the Plaintiff has failed to state a claim of discrimination in housing based on a disability.

Finally, the Plaintiff alleges that, when she complained to Northwest Indiana CA that it is unfair that her landlord has a mortgage on the property she rents, she was retaliated against by the termination of her housing assistance. Second Am. Compl. ¶¶ 2, 4, 13, 28 (Concl.). It is

illegal "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. The Seventh Circuit has held that § 3617 covers broader conduct than only that directly prohibited by the FHA in §§ 3603–3606 and provides protections afforded by the FHA after the person takes possession of the rental unit. *Bloch v. Frischholz*, 587 F.3d 771, 781–82 (7th Cir. 2009). Notably, the applicable regulations "protect[] an individual's ability to report a discriminatory housing practice to a housing provider or other appropriate authority." *Riley v. City of Kokomo*, 909 F.3d 182, 192 (7th Cir. 2018) (citing 24 C.F.R. § 100.400(c)(6)); *see Davis v. Fenton*, No. 13 C 3224, 2016 WL 1529899, at *6 (N.D. Ill. Apr. 13, 2016) (finding "that, for the purposes of Section 3617, 'exercise or enjoyment of' FHA rights properly includes suing to enforce those rights" (citing cases)).

To prove a retaliation claim under the FHA, "a plaintiff must show that: (1) she engaged in protected activity; (2) she suffered an adverse action; and (3) there was a causal connection between the two." *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 868 (7th Cir. 2018) (citations omitted). Proof of discriminatory animus is not a required element of a retaliation claim. *Id.* (explaining that "a claim under section 3617 requires showing intentional discrimination only when considering an *interference* claim" (citing *Bloch*, 587 F.3d at 783; *East-Miller v. Lake Cnty. Highway Dep't*, 421 F.3d 558, 562–63 (7th Cir. 2005); *Halprin v. Prairie Single Fam. Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330–31 (7th Cir. 2004))). Here, the Plaintiff fails to state a claim of retaliation under § 3617.[3]

---

[3] To the extent the Plaintiff is instead alleging an interference claim under § 3617, the Plaintiff again fails to state claim. *See* July 6, 2021 Op. & Order 6–8, ECF No. 6. In *Bloch*, the Seventh Circuit held, "To prevail on a § 3617 claim, a plaintiff must show that (1) she is a protected individual under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate." *Bloch*, 587 F.3d at 783 (citing

7

First, the Plaintiff does not allege nor can it be reasonably inferred that she complained about a discriminatory housing practice based on race or gender or any other right granted or protected under §§ 3603–3606. *See Riley*, 909 F.3d at 192 (finding, on summary judgment, that there was no evidence that the plaintiff reported a discriminatory housing practice as opposed to reporting a failure to adhere to certain procedures that the plaintiff believed to be fraudulent). Rather, she alleges retaliation for "speaking out against the issue which pertains to [her landlord] taking out a loan on the house where she resides and expecting her to pay him rent while he pays a mortgage, taxes, and insurance on the place from the money received to him by section 8 and [the Plaintiff]." Second Am. Compl. ¶ 28 (Concl.).

Second, even if she has alleged sufficient facts from which a reasonable inference could be drawn that she engaged in protected activity,[4] she has not alleged facts to create a reasonable inference that there is a causal connection between any protected activity and the letter informing her that her housing assistance may be terminated due to her failure to pay rent, which ultimately led to the termination of her housing assistance on that basis. In her Amended Complaint, the Plaintiff alleged that the May 5, 2021 letter from Northwest Indiana CA stated, "Dear Ms. Norman, On May 5th, 2021, your landlord informed NICA Housing Department you were

---

*East-Miller*, 421 F.3d at 563); *see also Wetzel*, 901 F.3d at 868 (distinguishing claims of interference and retaliation under § 3617). As with the Amended Complaint, the Second Amended Complaint fails to allege any facts to raise a plausible inference that Northwest Indiana CA was motivated by an intent to discriminate based on the Plaintiff's race or sex when she was informed that her housing assistance may be terminated for failure to pay her rent or when her housing assistance was terminated for failure to pay her rent. *See Bloch*, 587 F.3d at 783; *Davis*, 2016 WL 1529899, at *8 (finding that the plaintiff "failed to include *any* allegations that 'raise[] at least a minimal inference that Defendants acted with a discriminatory motive'" (citation omitted)); *see also* July 6, 2021 Op. & Order 6–8.

[4] Although not alleged in the original complaint, the Plaintiff alleges in the Second Amended Complaint that it is a discriminatory housing practice, based on her race and gender, for her landlord to have a mortgage on the house she rents. *See* Second Am. Compl. ¶ 13; *see also Riley*, 909 F.3d at 192 (referencing, on an FHA retaliation claim, the Title VII requirement "that a plaintiff have a 'sincere and reasonable belief' that 'the complained-of conduct entailed a motive that Title VII prohibits'" (quoting *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016))).

8

refusing to pay your rent. Please Note this is a violation of your Family Rights and obligations and may result in termination from the program. Please make sure to continue to follow all terms of your lease to avoid termination." Am. Compl. 2, ECF No. 4. In its previous order, the Court found that the Plaintiff did not allege that she made any formal complaint or filed any prior lawsuit that would provide the basis of a retaliation claim and that she did not allege, nor can it be inferred from the facts alleged, that Northwest Indiana CA sent her the May 5, 2021 letter because she filed her original complaint in this case. *See* July 6, 2021 Op. & Order 6, ECF No. 6. The Plaintiff has not cured this defect in the Second Amended Complaint.[5]

"When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible." *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (citations omitted). However, if the amendment would be futile, leave to amend need not be granted. *Id*. (citing *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994)). The Plaintiff has been given two opportunities to amend her complaint, and both have proven futile. Accordingly, the Court denies the Plaintiff's Motion to Proceed in Forma Pauperis and dismisses the Second Amended Complaint with prejudice.

---

[5] As the Court noted in its prior opinion, the federal regulations provide that a public housing authority may terminate Section 8 housing assistance payments to a participant for a serious violation of the lease. *See* July 6, 2021 Op. & Order 7 (citing 24 C.F.R. §§ 982.551(e), 982.552(a)(1), (3), (c)(1)(i)). The regulations require the housing authority to give the participant a written description of her family obligations under the program, the grounds on which it may terminate assistance because of her failure to act, and the informal hearing procedures. *Id*. (citing 24 C.F.R. § 982.552(d)). And, the regulations require the housing authority to give prompt written notice that the participant may request a hearing on the determination under § 982.552 to terminate assistance. *Id.* (citing 24 C.F.R. § 982.555(a)(1)(iv), (c)(2)).

## CONCLUSION

Based on the foregoing, the Court DENIES the Plaintiff's Motion to Proceed In Forma Pauperis [ECF No. 7] and DISMISSES with prejudice the Second Amended Complaint [ECF No. 6] pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[6]

SO ORDERED on September 24, 2021.

    s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

---

[6] The Court again notes that Plaintiff LaSandra Norman has filed several pro se complaints with this Court as of the date of this Opinion and Order: 2:11-CV-97-RL; 2:12-CV-210-JTM; 2:16-CV-113-RLM; 2:17-CV-416-RL; 2:18-CV-204-PPS; 2:19-CV-365-TLS; 2:19-CV-372-TLS; 2:20-CV-51-JEM.